IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DAVID BALL**, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**NEW RIVER VALLEY PIZZA, LLC d/b/a "Domino's Pizza"**,<br><br>Defendant. | **Case No. 7:19-cv-362**<br><br>**Jury Demanded** |

**JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiff, David Ball, individually and on behalf of similarly situated persons ("Plaintiff"), together with Defendant, New River Valley Pizza, LLC d/b/a "Domino's Pizza" ("Defendant"), by and through their undersigned counsel, respectfully request that this Court grant final approval of the Settlement and Release Agreement ("Agreement") (Dkt. #13) reached by the Parties to this action, including payment of reasonable attorneys' fees and costs. As set forth below, the Agreement is fair and reasonable and should be approved by the Court. Accordingly, the Parties respectfully request the Court issue an Order:

(1) certifying for settlement purposes the following class:

All delivery drivers who worked for Defendant during the period of May 14, 2016 to July 20, 2020.

(2) granting final approval of the Agreement;

(3) approving distribution of the Net Settlement Fund, as defined in the Agreement, to the Plaintiff, Opt-in Plaintiffs, and remaining Class Members;

(4) approving a participation award payment in the amount of $4,000.00 to Plaintiff David Ball and $2,000.00 to Opt-In Plaintiffs Bobbitt, Davison, and Handy;

1

(5)   approving payment of the actual costs of the Settlement Claims Administrator in an amount not to exceed $15,000;

(6)   approving attorneys' fees to Class Counsel[1] in the amount of $175,000.00, which is equivalent to one-third of the Total Settlement Amount, and reimbursement of Collective Counsel's actual costs and litigation expenses to date, which are less than $10,000.00; and

(7)   entering a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

## I.   **INTRODUCTION**

This lawsuit for unpaid minimum wages against Defendant was settled following a mediation between the Parties, subject to the Court's approval. On July 20, 2020, the Court granted the Parties' "Joint Motion For Preliminary Approval of Settlement Agreement." (Dkt. #13) and issued an Order that:

(1)   authorized the Parties to send notice of the Agreement to a group of similarly situated individuals consisting of:

> All delivery drivers who worked for Defendant from May 14, 2016 to July 20, 2020.

(2)   approved the Notice of Class Action Settlement ("Round 2 Notice") and proposed Claim Form as set forth as an "Exhibit" to the Agreement;

(3)   authorized for a third-party Settlement Claims Administrator, as agreed to by the Parties pursuant to the terms of the proposed Agreement, to send notices to all Delivery Drivers containing the Court's approved Notice, Claim Form, and a postage paid return envelope addressed to the Settlement Claims Administrator pursuant to the terms of the Agreement; and

(4)   approved the proposed schedule and procedure for the final approval of the proposed Agreement. (Dkt. # 13).

Pursuant to the Court's Order dated July 20, 2020 (Dkt. #13), the Parties notified all Class Members of the date and time of the Fairness Hearing, along with contact information to obtain

---

[1] The term "Class Counsel" refers to the attorneys who represent Plaintiff and the Class Members.

2

additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's Order. There are no objections to the Agreement nor has any driver requested exclusion from the Agreement. *See* **Exhibit 2**, Declaration of third-party Settlement Claims Administrator. For the reasons set forth below, the Court should grant the Parties' motion.

## II.     BACKGROUND

Plaintiff filed this lawsuit ("the Litigation") on behalf of himself and similarly situated Delivery Drivers who were hired to deliver pizzas for Defendant. Plaintiff alleges Defendant violated the Fair Labor Standards Act ("FLSA") and related state laws by failing to pay him and other similarly situated Delivery Drivers the lawful and applicable minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendant.

The Parties participated in an alternative dispute resolution ("ADR") process that included a full-day in-person mediation before retired Magistrate Judge, Hon. Bradford Stillman, an experienced wage and hour class and collective action mediator, on February 19, 2020. Prior to the mediation, the Parties engaged discovery that included the production of mileage and mileage reimbursement data for each of the Round 1 Opt-Ins and remaining Class Members.  In preparation for the mediation, the Parties prepared detailed mediation statements and damages analyses. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations under the FLSA and state law. Utilizing these calculations, Plaintiff concluded he had sufficient information concerning Plaintiff's claims and Defendant's defenses from which to reach a fair settlement of this matter. At the mediation, the Parties settled this putative class and collective action on the terms set forth within the Settlement Agreement. The terms of the Parties' settlement are set forth in the Parties' Agreement, which is re-attached hereto as **Exhibit 1**.

The Agreement provides an excellent outcome for the Plaintiff, Opt-in Plaintiffs, and remaining Class Members. Defendant contends that their reimbursements to Delivery Drivers are

reasonable approximations of their automobile expenses and do not cause Delivery Drivers' wages to fall below the minimum wage. Defendant further contends that even if liability were established by Plaintiff, which they deny, they acted in good faith and that a two-year, as opposed to an extended statute of limitations should apply to Plaintiff's claims. If the Court were to accept these arguments, it would negate a substantial percentage, or all of the alleged damages in the case and disqualify a large number of Delivery Drivers who were employed by Defendant outside of the two-year federal statutory period.

Notwithstanding these defenses, Plaintiff was able to obtain a recovery for all eligible Delivery Driver Settlement Class Members who were employed by Defendant during the three-year period preceding the filing of the Complaint. Plaintiff respectfully submits that this Motion should be granted because the proposed Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

**III.    THE TERMS OF THE AGREEMENT**

The Parties negotiated the Agreement on behalf of a Settlement Class of Delivery Drivers defined as: All delivery drivers who worked for Defendant from May 14, 2016 to July 20, 2020. The Agreement allowed Delivery Drivers to participate in the settlement on an opt-in basis. The Agreement then provides that even those Delivery Drivers who elected not to opt-in would still be eligible for a monetary recovery. Following the settlement notice round, zero drivers opted-out of the settlement and zero objections to the settlement were filed.

Pursuant to the Agreement and following the settlement notice period, the Maximum Settlement Amount Defendants will pay is $383,000.00. If approved by the Court, the distribution of the Maximum Settlement Amount will be as follows:

1.    Plaintiff, Opt-in Plaintiffs, and remaining Class Members will receive allocation from the $173,000.00 Net Settlement Fund based primarily on the total delivery miles driven by each Settlement Class Member and the notice period claims rate;

4

2. The Settlement Claims Administrator, CAC Services Group, LLC, will receive an amount not to exceed $15,000.00;

3. Plaintiff Ball will receive $4,000.00 as participation payments in recognition of the work involved and the benefits achieved by the Plaintiffs, and Opt-In Plaintiffs Bobbitt, Davison, and Handy will receive $2,000.00;

4. Class Counsel will receive $175,000.00 in attorneys' fees which is one-third of the total negotiated settlement amount and be reimbursed advanced litigation costs and expenses in an amount not to exceed $10,000.00; and

5. Any amounts of the Net Settlement Fund representing the funds attributable to stale checks (those unclaimed 180 days after the initial mailing), will be held in a QSF and added to the $30,000 Contingent Fund portion of the Net Settlement Fund, to be available for late claims or to reissue stale checks during the Contingent Fund Period, with unclaimed amounts after the Contingent Fund Period to be retained by Defendant.

### IV. THE COURT SHOULD APPROVE THE AGREEMENT

In the Fourth Circuit, there is a two-step process to determine whether a proposed settlement conforms to the requirements of Federal Rule of Civil Procedure 23(e) by considering: (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses on whether the consideration provided to the class members is sufficient. *McLaurin v. Prestage Foods, Inc.*, 2011 WL 13146422, *3 (E.D.N.C. Nov. 9, 2011) (*citing In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (same). This Court has already preliminarily approved the proposed settlement and Class Members have received noticed of the proposed settlement. Zero Class Members have objected to the settlement, zero opt-outs were received, and the Court should finally approve the

5

settlement for the additional reasons that follow.

### A.      Standard for Final Approval of Class Settlements

Public policy strongly favors the settlement of disputes without litigation. *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014)*; Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). Accordingly, settlement agreements should be upheld whenever equitable and policy considerations so permit. *Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840, 846 (E.D. Va. 2003), aff'd, 176 Fed. Appx. 109 (Fed. Cir. 2006) (*citing Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.1976)). This is especially true in class action litigation, in which there is a strong presumption in favor of class action settlements. *Clark v. Duke University*, 2019 WL 2588029, at *4 (M.D. N.C. 2019) (citing 4 Newberg on Class Actions § 13:44 (5th ed.)) (noting that the law generally favors settlement, particularly in class actions); *Sims v. BB&T Corporation*, 2019 WL 1995314, at *3 (M.D. N.C. 2019) (citing 4 Newberg on Class Actions § 13:44 (5th ed.)).

Parties settling a class action must seek approval of the settlement from the Court. FED. R. CIV. P. 23(e). Under Rule 23(e)(2), at the final approval stage, the Court ultimately must determine that the settlement is "fair, reasonable, and adequate." *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D.Va.2001) (*citing Jiffy Lube*, 927 F.2d at 158–59). The Court has broad discretion in evaluating a class action settlement and its decision to approve a settlement will be reversed only for an abuse of discretion. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975) Notwithstanding its discretion, the Court's evaluation of the Settlement is guided by the following "presumptions and rules": "that settlement is favored; that a settlement reached at arms-length is presumed to be fair; [and] that a court must accept or reject the settlement but cannot rewrite it." Newberg on Class Actions § 13:43 (5th ed. 2016). For the reasons that follow, approval of the Settlement Agreement is warranted.

1. **The Proposed Settlement Was Honestly and Fairly Negotiated**

"In order to determine whether a proposed settlement is fair to the parties, courts consider: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the type of case at issue." *McLaurin*, 2011 WL 13146422 at *3 (*citing In re Jiffy Lube*, 927 F.2d at 158–59). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *In re Jiffy Lube*, 927 F.2d at 158.

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. (*See* Declaration of Jay Forester, Dkt. #13, Exh. 2). The Parties investigated the merits of the claims and Defendant's defenses and engaged in mediation with retired Magistrate Judge, Hon. Bradford Stillman.[2] Prior to mediation, the Parties debated the claims, and exchanged informal discovery and information in order to evaluate the potential claims. Defendant produced all necessary class-wide data in order for Plaintiff to calculate class wide damages, which Plaintiff shared with Defendant prior to the mediation. Following a full-day mediation session, the Parties' counsel negotiated the full and final settlement terms at arms-length during the following months, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. All Parties were in a sufficient position to evaluate the merits and defenses, and vigorously debated their positions during the all-day mediation. As such, this Court should find the settlement was reached fairly between the Parties. *See In re Jiffy Lube*, 927 F.2d at 159 (affirming class action settlement as fair even though settled early in litigation prior to formal discovery because of the parties' informal discovery and experience of counsel); *see also Smith v. Southeastern Pizza People, Inc. d/b/a "Domino's Pizza", et al.,* No. 7:19-cv-00105-FL (E.D. NC.

---

[2] Conducting mediation before a third-party mediator helps ensure no collusion and an arms-length negotiation. *Hainey v. Parrot*, 617 F.Supp.2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("In general, a settlement arrived at after arm's length bargaining may be presumed to be fair.").

Aug. 28, 2020) (recent hybrid FLSA and Rule 23 settlement finally approved for similar claims and structure); *Rechtoris v. Dough Mgmt., Inc.*, No. 3:18CV708-PPS/MGG, 2020 WL 1041489, at *2 (N.D. Ind. Mar. 3, 2020) (recent FLSA and Rule 23 settlement preliminarily approved for similar claims and structure); *Breit v. GBR Pizza, Inc.*, No. 5:19-cv-257 (E.D.N.C. Feb. 24, 2020) (recent hybrid FLSA and Rule 23 settlement finally approved for similar claims and structure).

    **2.**    **Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt**

The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. *Flinn*, 528 F.2d at 1172. Accordingly, courts "weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (internal quotation marks omitted). In weighing the likelihood of success, the Court should not "decide the merits of the case or resolve unsettled legal questions." *In re India Globalization Capital, Inc., Derivative Litig.*, DKC 18-3698, 2020 WL 2097641, at *4 (D. Md. May 1, 2020) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Rather, the Court should find in favor of final approval of the settlement when the possibility of plaintiff's litigating the case is highly uncertain and would involve expensive, time-consuming continued litigation, whereas the overall value of the settlement is significant. *Weaver v. AEGON USA, LLC*, 4:14-CV-03436-RBH, 2015 WL 5691836, at *14 (D.S.C. Sept. 28, 2015), modified, 4:14-CV-03436-RBH, 2016 WL 1570158 (D.S.C. Apr. 19, 2016).

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. To continue through trial would expose the Parties to significant risks. *See* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed.2002) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Plaintiff believes that his claims are strong but recognizes that success is not guaranteed. Plaintiff

8

believes Defendants violated the FLSA and state law by failing to pay him and other similarly situated Delivery Drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants, however, contend that their reimbursements to Delivery Drivers are reasonable approximations of their automobile expenses and do not cause Delivery Drivers' wages to fall below the federal minimum wage. Defendants are also confident that Plaintiffs would ultimately not prevail in certifying the class because individualized inquiries would be necessary to determine the Class Members' damages. Nonetheless, while Defendants believe that their defenses are strong, they recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute whether the three-year limitations period under the FLSA applies, whether the two-year period for non-willful violations under the FLSA, or whether Virginia state law (limited to FLSA claims) would be applicable in this matter. Second, Defendants contend their actions were at all times taken in good faith, negating the FLSA's liquidated damages provision. Third, Defendants dispute that class or collective action treatment is appropriate in this case. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3. The Class Recovery is Substantial and Adequate

The adequacy prong requires consideration of: "(1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159. Further, in deciding whether a settlement is fair, reasonable, and adequate a factor Courts consider is whether the value of immediate

9

recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *In re MI Windows & Doors, Inc., Products Liab. Litig.*., 860 F.3d 218 (4th Cir. 2017); *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 580 (E.D. Va. 2016). A finding that the value of an immediate recovery outweighs the possibility of future relief can be made after a competent evaluation of the case by counsel. *Brown*, 318 F.R.D. at 580. The benefit of a proposed settlement framework outweighs the value of any remedy that litigation might produce. *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 425 (4th Cir. 2003); *Id*. The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the parties will engage in additional discovery, including depositions of the individual Defendants, Plaintiff, and numerous Round 1 opt-in Plaintiffs. The parties would also have to engage in extensive motions practice including completing briefing on Plaintiff's Motions for Class Certification and Approval of Notice, as well as Defendants' Motion to Decertify the Class, if the Court does certify a class, and Motions for Summary Judgment as to various issues in the case. The trial would include testimony by representatives of the Defendants, Class Members, and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendants which could bankrupt them, leaving nothing for the Class Members to recover. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d 654, 667 (E.D. Va. 2001) (quoting State of W. Va. v. Chas. Pfizer & Co., 314 F. Supp. 710, 743 (S.D.N.Y. 1970), aff'd, 440 F.2d 1079 (2d Cir. 1971)). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved.

### 4. Counsel Believe The Settlement Is Fair And Reasonable

Counsel for both sides fully support the Settlement Agreement, and in deciding whether a proposed settlement warrants approval the informed and reasoned judgement of counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference. *See Flinn*, 528 F.2d at 1173; *Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 2d 922, 927 (D.S.C. 2011); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 831 (E.D.N.C. 1994). When evaluated in light aforementioned factors identified by this Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### B. Standard for Approval of FLSA Settlements

As stated above, the settlement provides relief for individuals who have affirmatively opted-in to this matter pursuant to the FLSA's collective action procedures and for those who have chosen not to opt-out of the settlement pursuant to Rule 23. For many of the reasons stated above regarding settlements under Rule 23, the settlement is a fair and adequate resolution under the FLSA and ought to be approved.

In a lawsuit brought by an employee against his or her employer under § 216(b), the employee may settle and release FLSA claims if the parties present to the court a proposed settlement and the court approves the settlement. *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1353 (11th Cir.1982)). The settlement should be approved when it is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Id.*

As explained above, the Parties are represented by experienced and competent counsel and the Parties engaged in extensive negotiations. In addition, counsel for the Parties have discussed at considerable length Plaintiffs' assertions and Defendants' defenses, and their respective legal theories in support of their positions. This settlement of these claims results from a compromise between the Parties on a variety of *bona fide* disputes regarding issues of law and fact, including the

applicable reimbursement rate and the propriety of Defendants' use and application of a tip credit. The Settlement occurred only after informal discovery, including production of payroll and reimbursement records to facilitate both Parties' ability to make detailed legal and factual analyses of the claims and defenses, arms-length negotiation between Plaintiffs' counsel and Defendants' counsel, and a full-day mediation with retired Magistrate Judge, Hon. Bradford Stillman, experienced in resolving wage & hour disputes under the FLSA. The Parties stipulate that they are resolving the matter to avoid unnecessary further costs, time, and risks associated with continuing this litigation. The Parties also considered the inherent risks in bringing the matter to trial, judicial resources, and the costs and time associated with further litigation and determined a settlement would be in the public's interest.

The Settlement negotiated in this case reflects a reasonable compromise of the disputed issues and other relevant considerations. All Parties, through their attorneys, voluntarily agreed to the terms of the Settlement during negotiations. All Parties were counseled and represented by their respective attorneys throughout the litigation, negotiation, and settlement process. The Settlement amounts apportioned to the different Opt-Ins will take into account and be apportioned based on the specific number of miles driven and rate of reimbursement of each Opt-In. Counsel for all Parties agree that, in their respective opinions, the settlement is fair and reasonable under the circumstances. Because the Settlement agreed to by the Parties is a fair and equitable compromise of a *bona fide* dispute, the Parties request that the Court approve the Settlement and enter a final judgment dismissing the case, in its entirety, with prejudice.

## V.    CONCLUSION

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in

12

wage and hour class action litigation and through the assistance of an equally experienced mediator, retired Magistrate Judge, Hon. Bradford Stillman.  For the foregoing reasons, the Parties respectfully request that the Court finally approve the Settlement.

                                         RESPECTFULLY SUBMITTED,

                                         */s/* Gregg C. Greenberg_____
                                         Gregg Greenberg, Esq. (#79610)
                                         ZIPIN, AMSTER & GREENBERG
                                         8757 Georgia Avenue, Suite 400
                                         Silver Spring, MD 20910
                                         Phone: (301) 587-9373
                                         ggreenberg@zagfirm.com

                                         Jay Forester
                                         Texas State Bar No. 24087532
                                         **FORESTER HAYNIE PLLC**
                                         400 N. St. Paul Street, Suite 700
                                         Dallas, TX 75201
                                         Phone: (214) 210-2100
                                         Fax: (214) 346-5909
                                         Email: jay@foresterhaynie.com

                                         **Attorneys for Plaintiff and the Proposed Class**

                                         /s/ *Sherron Thomas McClain*_____
                                         Sherron Thomas McClain (# 72285)
                                         **FISHER & PHILLIPS LLP**
                                         7501 Wisconsin Avenue, Suite 1220W
                                         Bethesda, MD 20814
                                         Phone: (301) 880-5014
                                         stmcclain@fisherphillips.com

                                         Kathleen McLeod Caminiti
                                         430 Mountain Avenue, Suite 303
                                         Murray Hill, NJ 07974
                                         Phone: (908) 516-1050
                                         kcaminiti@fisherphillips.com

                                         **Attorneys for Defendants**

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.

>*/s/* Gregg C. Greenberg
>Gregg Greenberg